**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SCG AMERICA GROUP, INC.,

       Plaintiff,

v.

STARLIGHT SECURITY INC.,

       Defendant.

Civ. Action No. 20-2877
(EGS)

**<u>MEMORANDUM OPINION</u>**

## I.  Introduction

SCG America Group, Inc. ("SCG" or "Plaintiff") brings this action against Starlight Security Inc. ("SSI" or "Defendant") alleging breach of contract and negligence claims following a redevelopment project at the consular residence building owned by the Embassy of the People's Republic of China and located in the District of Columbia (the "District"). *See* Am. Compl., ECF No. 9 ¶¶ 16, 43-53.[1]

Pending before the Court is SSI's Motion to Dismiss, ECF No. 10. Upon careful consideration of the parties' submissions,

---

[1] When citing electronic filings throughout this Opinion, the Court refers to the ECF page numbers, not the page numbers of the filed documents.

the applicable law, and the entire record herein, the Court hereby **DENIES** SSI's motion.

## II.  Background

### A. Factual

The People's Republic of China ("China") hired SCG as its general contractor to complete a redevelopment project at the consular residence building in Washington, D.C. (the "Project"). *See* Am. Compl., ECF No. 9 ¶ 16. SCG's parent company is Shanghai Construction Group, a large, prominent construction company in China. *Id.* ¶ 7. The Project is the only construction work SCG has ever performed in the District. *Id.* ¶ 8.

On December 5, 2016, SCG entered into a contract with SSI, a fire alarm subcontractor. *Id.* ¶¶ 10, 16 (citing Ex. A ("Subcontract Agreement"), ECF No. 9-1). Pursuant to this contract (the "Subcontract Agreement"), SSI was required to furnish and install the fire alarm system at the Project for $980,000.00. *Id.* ¶ 17. The parties agreed that SCG would make payments on a progress basis. *Id.* ¶ 18. The parties also agreed that SCG was entitled to withhold certain payments and/or collect damages from SSI under certain circumstances. *Id.* ¶¶ 18-22.

SCG alleges that, during the duration of the Subcontract Agreement, SSI repeatedly defaulted on its contractual obligations. *See id.* ¶¶ 23-24, 34-35. In an attempt to resolve

their disputes and complete the fire alarm installation, the
parties entered into two additional agreements: the First
Addendum to Subcontract and the Second Addendum to Subcontract.
*See id.* ¶¶ 26, 28 (citing Ex. B ("First Addendum"), ECF No. 9-2;
Ex. C ("Second Addendum"), ECF No. 9-3). Pursuant to these
addenda, SCG paid SSI $100,000 in exchange for SSI's agreement
to complete its work on the Project. *See id.* ¶ 27.

SCG alleges that in December 2019, SSI again stopped work
on the Project and demanded payment. *Id.* ¶ 34. SCG then
determined that SSI "was not capable of completing the
contracted work" and sent SSI a Notice of Default as well as a
Notice of Termination of Subcontract Agreement in February 2020.
*Id.* ¶ 35 (citing Ex. D ("Notice of Default"), ECF No. 9-4; Ex. E
("Notice of Termination of Subcontract Agreement"), ECF No. 9-
5).

SCG thereafter engaged a different subcontractor to
complete the fire alarm installation and to redo a significant
portion of SSI's work. *Id.* ¶¶ 36-38. SCG alleges that it has
incurred significant additional expenses, including its payments
to the new subcontractor, the costs of amplifier panels withheld
by SSI, and other damages. *Id.* ¶¶ 39-41.

**B. Procedural**

SCG filed this lawsuit on October 8, 2020, *see* Compl., ECF
No. 1; and amended the Complaint later that year on December 29,

2020, *see* Am. Compl., ECF No. 9. On January 12, 2021, SSI filed this Motion to Dismiss the Amended Complaint. *See* Def.'s Mot. Dismiss Pl.'s Am. Compl. &, in the Alternative, Mot. Summ. J., ECF No. 10; Def. Starlight Security Inc.'s Mem. Supp. Mot. Dismiss ("Def.'s Mot."), ECF No. 10-1. SCG filed its opposition brief on January 26, 2021, *see* Pl.'s Mem. P. & A. Opp'n Def.'s Mot. Dismiss Am. Compl. & Summ. J. ("Pl.'s Opp'n"), ECF No. 11; and SSI filed its reply brief on February 1, 2021, *see* Reply Supp. Def.'s Mot. Dismiss & Mot. Summ. J. ("Defs.' Reply"), ECF No. 12. SSI's motion is now ripe and ready for adjudication.

## III. Legal Standard

### A. Rule 12(b)(6) Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted).

Despite this liberal pleading standard, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
(citation and internal quotation marks omitted). "In determining
whether a complaint fails to state a claim, [the court] may
consider only the facts alleged in the complaint, any documents
either attached to or incorporated in the complaint and matters
of which [the court] may take judicial notice." *EEOC v. St.
Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir.
1997). A claim is facially plausible when the facts pled in the
complaint allow the court to "draw the reasonable inference that
the defendant is liable for the misconduct alleged." *Iqbal*, 556
U.S. at 678. The standard does not amount to a "probability
requirement," but it does require more than a "sheer possibility
that a defendant has acted unlawfully." *Id.*

"[W]hen ruling on a defendant's motion to dismiss [pursuant
to Rule 12(b)(6)], a judge must accept as true all of the
factual allegations contained in the complaint." *Atherton v.
D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009)
(citation and internal quotation marks omitted). In addition,
the court must give the plaintiff the "benefit of all inferences
that can be derived from the facts alleged." *Kowal v. MCI
Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## B. Rule 12(b)(3) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(3) authorizes a party
to move to dismiss a case for "improper venue." Fed. R. Civ. P.

12(b)(3). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). The plaintiff bears the burden of establishing that venue is proper. *Ananiev v. Wells Fargo Bank, N.A.*, 968 F. Supp. 2d 123, 129 (D.D.C. 2013) (citations omitted).

In considering a motion to dismiss for improper venue, the court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor and resolves any factual conflicts in the plaintiff's favor." *McCain v. Bank of Am.*, 13 F. Supp. 3d 45, 51 (D.D.C. 2014) (citations and internal quotation marks omitted), *aff'd sub nom. McCain v. Bank of Am. N.A.*, 602 F. App'x 836 (D.C. Cir. 2015). "The Court, however, need not accept the plaintiff's legal conclusions as true, and may consider material outside the pleadings, including undisputed facts evidenced in the record, to determine whether it has jurisdiction in the case." *Ananiev*, 968 F. Supp. 2d at 129 (citations and internal quotation marks omitted).

## IV.  Analysis

### A. SCG May Proceed with Its Breach of Contract Claim

SSI moves to dismiss Count I of the Amended Complaint, which alleges breach of contract, because SCG was the general

6

contractor for the Project but failed to comply with local licensing regulations. *See* Def.'s Mot., ECF No. 10-1 at 5-13. For the reasons that follow, the Court **DENIES** SSI's motion as to this claim.

District of Columbia law requires that "individuals or businesses engaged in general contracting or construction management" obtain "[a] General Contractor/Construction Manager License." D.C. Code Ann. § 47-2851.03d(b). To comply, general contractors[2] and construction managers[3] must apply to the Department of Consumer and Regulatory Affairs to receive a basic business license with a general contractor/construction manager endorsement. D.C. Mun. Regs. tit. 17, § 3900.1. The District prohibits "[a] person which is required under law to obtain a license issued in the form of an endorsement to engage in a business in the District of Columbia" from "engag[ing] in such business in the District of Columbia without having first

---

[2] District regulations define general contractor as "any person who, for a fee, is contracted to do construction on real property owned, controlled, or leased by another person of commercial, industrial, institutional, governmental, residential or accessory use buildings or structures. This also includes the remodeling, repair, improvement or demolition of these buildings or structures." D.C. Mun. Regs. tit. 17, § 3999.

[3] District regulations define construction manager as "any person who, for a fee, is contracted to supervise and coordinate the work of design professionals and multiple general contractors, while allowing the design professionals and general contractors to control individual operations and the manner of design and construction." D.C. Mun. Regs. tit. 17, § 3999.

obtained a basic business license and any necessary endorsements." D.C. Code Ann. § 47-2851.02(a).

Here, SSI argues that SCG is subject to the above licensing scheme, has failed to comply, and therefore cannot enforce the contract at issue. *See* Def.'s Mot., ECF No. 10-1 at 5-10. SSI explains that SCG should have obtained the basic business license with a general contractor/construction manager endorsement because SCG was the general contractor for the Project and the Project was located in the District. *See id.* at 8-10. SSI then reviews caselaw from the federal and local courts in the District and determines that "courts have consistently barred individuals and entities that violated licensing requirements from asserting breach of contract and/or quantum meruit actions." *Id.* at 7 (collecting cases); *see also id.* at 5-7 (collecting and discussing cases). SSI thus concludes that the Subcontract Agreement is "void, unenforceable, illegal, and in violation of [D.C.] public policy" because SCG did not have the appropriate license at any time between execution of the original contract and filing of the Amended Complaint. *Id.* at 10.

SCG disagrees that the District's licensing laws apply here. *Id.* at 11. SCG argues that a 2009 executive agreement (the "Executive Agreement") between China and the United States governs the Project and allows China "to engage a general

contractor . . . without regard for local government 'restrictions' or licensure requirements." *Id.* at 11-12 (citing Decl. of Hongquan Li ("Li Decl."), ECF No. 11-1 ¶¶ 3-4; Ex. A, Agreement Between the United States of America and China ("Executive Agreement"), ECF No. 11-2 ¶ 1.5). SCG reasons that the Court must resolve the conflict between the Executive Agreement and the District's licensing laws in favor of the Executive Agreement because it is federal law to which state law must yield. *See id.* at 13 (citing *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 425-27 (2003)).

The Executive Agreement at issue here is the Agreement Between the Government of the United States of America and the Government of the People's Republic of China on the Conditions of Construction of Diplomatic and Consular Complexes in the People's Republic of China and the United States of America. *See generally* Executive Agreement, ECF No. 11-2. This agreement explicitly governs construction projects at the Chinese consular building located at 2300 Connecticut Avenue in Washington, D.C. *Id.* ¶¶ 1.5, 1.6. Having "entered into force" on August 20, 2009, *see id.* at 4; it is "to be treated with similar dignity" as any treaty, whose "supremacy . . . has been recognized from the beginning," *United States v. Pink*, 315 U.S. 203, 223 (1942) (citation and internal quotation marks omitted). Accordingly, the Executive Agreement "is not and cannot be subject to any

curtailment or interference on the part of the several states,"
and "state law must yield when it is inconsistent with or
impairs the policy or provisions" of the agreement. *Id.* at 223,
230-31 (citations and internal quotation marks omitted).

The Executive Agreement sets forth the two countries'
responsibilities with respect to construction at the consular
property. *See generally* Executive Agreement, ECF No. 11-2. Two
sections are relevant to this dispute. The first section—on
Construction Standards and Quality Safety Responsibilities—
states: "The Construction Party[4] shall be responsible for the
quality and safety of its project during construction. The Host
Country[5] shall not require the Construction Party to enter into
a contract with a local firm to supervise the construction." *Id.*
¶ 5.3. The second section—on Personnel and Companies—states:
"The Construction Party shall have the right to select project-
related personnel and companies of its own choosing and of any
nationality (including from the Host Country, the Construction
Party or third countries) to perform all work in connection with
its project." *Id.* ¶ 9.1.

SSI argues that these provisions do not absolve SCG from
complying with District licensing laws. *See* Def.'s Reply, ECF
No. 12 at 3. SCG interprets these provisions to "clearly mean[]

---

[4] The Construction Party here is China.
[5] The Host Country here is the United States.

that the Construction Party need not choose an existing local contractor to fulfill the work," but "does not . . . in any way state that the contractor, once chosen and retained, is relieve[d] from the express obligation to properly register as a general contractor in the District of Columbia." *Id.* The Court is unpersuaded by this construction. Under the Executive Agreement, China is wholly responsible for the quality and safety of all its consular construction projects, including the Project here. Executive Agreement, ECF No. 11-2 ¶ 5.3. The agreement therefore grants China wide latitude over its selection of contractors for its consular construction projects, specifying that China need not retain a "local firm" to supervise construction. *Id.* Imposing the District's licensing requirements would effectively require China to engage a local general contractor and adhere to District safety standards. This result directly conflicts with the terms of the Executive Agreement.

SSI's remaining arguments are similarly unpersuasive. First, SCG contends that "the Executive Agreement *repeatedly* establishes that it is subject to the laws of the Host country." Def.'s Reply, ECF No. 12 at 2-3 (citing Executive Agreement, ECF No. 11-2 ¶¶ 2.1, 3.2, 3.6, 4.1, 4.2, 5.3). This summary is misleading. The Executive Agreement makes clear that China must comply with federal and local regulations for its consular

11

construction projects but only in certain instances. *See, e.g.*,
Executive Agreement, ECF No. 11-2 ¶¶ 4.1 (planning, design
review, and permits), 5.1 (inspections of equipment and lines at
utility interface points), 6.1 (use of temporary sites), 6.3
(obtaining easements), 10.8 (storage, use, and disposal of
hazardous materials), 12.4 (vehicle registration), 13.2 (local
work hour restrictions). For example, China must comply with
federal and local law in its installation and use of
telecommunications equipment, *id.* ¶ 3.6; but at the same time,
the agreement gives China complete discretion over its selection
of utility and service providers, *id.* ¶ 3.5. The Executive
Agreement does not contain any clear language requiring that
China comply with federal or state licensing for general
contractors, and the Court will not insert its own restriction.

SSI also argues that another federal law—the Foreign
Missions Act, 22 U.S.C. § 4301 *et seq.*—applies here and requires
China to comply with the District's licensing laws in its
consular construction projects. *See* Def.'s Mot., ECF No. 10-1 at
11-12; Def.'s Reply, ECF No. 12 at 5. The Foreign Missions Act
"'was designed to provide the Secretary of State with the
leverage necessary to remove unreasonable restraints and costs
on United States missions abroad' by giving the federal
government a voice in local regulation of services provided to
foreign missions within this country." *Sturdza v. Gov't of*

*United Arab Emirates*, No. CV 98-2051 (CKK), 1999 WL 35643442, at
*4 (D.D.C. Dec. 22, 1999) (quoting *Embassy of the People's
Repub. of Benin v. Dist. of Columbia Bd. of Zoning & Adjustment*,
534 A.2d 310, 314 (D.C. 1987)), *aff'd in part, rev'd in part and
question certified sub nom. Sturdza v. United Arab Emirates*, 281
F.3d 1287 (D.C. Cir. 2002), *certified question answered*, 11 A.3d
251 (D.C. 2011). As relevant here, the Act provides that "[t]he
Secretary [of State] shall require foreign missions to comply
substantially with District of Columbia building and related
codes in a manner determined by the Secretary to be not
inconsistent with the international obligations of the United
States." 22 U.S.C. § 4306(g). However, it contains no provision
regarding contractor licensing requirements. As the *Sturdza*
court explained, the District's building codes and licensing
requirements "are separate and distinct." *Sturdza*, 1999 WL
35643442, at *4. The Foreign Missions Act is thus inapplicable
here.

Third, SSI contends that the licensing laws must apply to
SCG because the D.C. Code applies to other government
construction projects. Def.'s Reply, ECF No. 12 at 4 (citing
D.C. Mun. Regs. tit. 17, § 1735); *id.* at 6 (citing D.C. Mun.
Regs. tit. 17, § 3907.1); *cf. id.* at 4 (discussing SCG's
registration and later correction of its registration). This
argument ignores supremacy principles, which dictate that "state

law must yield when it is inconsistent with or impairs the policy or provisions" of federal law, including executive agreements. *Pink*, 315 U.S. at 230-31. SSI's citation to *Sturdza* is equally unpersuasive. *See* Def.'s Reply, ECF No. 12 at 5. In that case, the district court ruled that an unlicensed architect could not bring her contract or quantum meruit claims against the United Arab Emirates for her work on the country's embassy because she failed to comply with the District's licensing requirements. *Sturdza*, 1999 WL 35643442, at *4. That dispute did not involve any executive agreement—and certainly not the Executive Agreement here. *See generally id.* The Court therefore cannot borrow the *Sturdza* court's reasoning.

In sum, the Court concludes that the Executive Agreement grants China the discretion to retain a general contractor of its choice without regard to local licensing laws. Because the Executive Agreement constitutes federal law and prevails over state law, SCG may pursue its breach of contract claim despite having been unlicensed during the Project. Accordingly, the Court **DENIES** SSI's Motion to Dismiss Count I of the Amended Complaint.[6]

---

[6] The Court need not address SCG's remaining contract defenses because SSI raises only the licensing issue in its Motion to Dismiss. *Cf. Benton v. Laborers' Joint Training Fund*, 121 F. Supp. 3d 41, 51 (D.D.C. 2015) ("[I]t is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief." (citations and

### B. SCG May Maintain Its Negligence Claim

SSI next moves to dismiss Count II of the Amended Complaint, which alleges negligence, for two reasons. *See* Def.'s Mot., ECF No. 10-1 at 13-15. First, it argues that SCG has not adequately pleaded the existence of a duty to bring a negligence claim. *See id.* at 13-14. Second, SSI argues that the economic loss doctrine bars this claim. *See id.* at 14-15. For the reasons below, the Court **DENIES** SSI's motion as to this claim.

### 1. SCG Has Adequately Alleged That SSI Owed a Duty

SSI first argues that the Court should dismiss the negligence claim because it "does not owe SCG an independent duty under the law of the District of Columbia." *Id.* at 13. Under District of Columbia law, "for a plaintiff to recover in tort for conduct that also constitutes a breach of contract, 'the tort must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship.'" *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 18 (D.D.C. 2019) (quoting *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008)), *on reconsideration in part*, 518 F. Supp. 3d

---

internal quotation marks omitted)). Additionally, the Court will not address SSI's argument, made in passing, that the Court should grant summary judgment because SSI has not presented any other arguments showing that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

43 (D.D.C. 2021). Here, SCG alleges that SSI owed a duty "to perform its work on the [P]roject in a skillful, careful, diligent, and workmanlike manner." Am. Compl., ECF No. 9 ¶ 51. SSI contends that this is "a near textbook example of an unsupported legal conclusion" because SCG does not state "where this legal duty is derived from under [D.C.] law." Def.'s Mot., ECF No. 10-1 at 14. SSI thus concludes that its only legal duty to SCG arises from the contract and the parties' contractual relationship. *See id.*

In its opposition briefing, SCG argues that SSI "owed . . . a duty to perform its work in a workmanlike manner." Pl.'s Opp'n, ECF No. 11 at 26. Citing authority from the District of Columbia Court of Appeals ("D.C. Court of Appeals"), SCG explains that this duty "exists independently from the terms of the Subcontract Agreement." *Id.* (citing *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1200 (D.C. 1984)). SSI does not address this caselaw in its reply briefing. *See* Def.'s Reply, ECF No. 12 at 5-7.

The Court is persuaded that SCG has adequately pleaded the existence of a duty. SSI is correct that "[t]he failure to perform a contractual obligation typically does not give rise to a cause of action in tort." *Attias*, 365 F. Supp. 3d at 18 (quoting *Jones v. Hartford Life & Accident Ins. Co.*, 443 F. Supp. 2d 3, 5 (D.D.C. 2006)). However, District of Columbia law

16

has long "'extended the tort liability for misfeasance to virtually every type of contract where defective performance may injure the promisee,'" thereby permitting a plaintiff who alleges a breach of contract to maintain a tort claim. *See Ehrenhaft*, 483 A.2d at 1200 (quoting W. Prosser, Law of Torts § 92, at 617 (4th ed. 1971)). Following this principle, the D.C. Court of Appeals has permitted negligence claims against contractors to proceed where plaintiffs allege a failure to perform work properly. *See id.* (collecting cases). Here, SCG alleges that SSI "(i) failed to complete its work on the Project in a timely manner and (ii) produced deficient and defective work on the Project, requiring a substitute contractor to repair and redo a substantial portion of the work SSI was obligated to complete." Am. Compl., ECF No. 9 ¶ 52. Stated differently, SCG's negligence claim is based on SSI's alleged failure to perform work properly. This allegation is sufficient to bring a negligence claim under District of Columbia law.

### 2. The Economic Loss Doctrine is Inapplicable

SSI also argues that SCG's negligence claim is barred by the economic loss doctrine. *See* Def.'s Mot., ECF No. 10-11 at 14-15. Under District of Columbia law, this doctrine "bars recovery of purely economic losses in negligence, subject to only one limited exception where a special relationship exists." *Aguilar v. RP MRP Wash. Harbour, LLC*, 98 A.3d 979, 986 (D.C.

17

2014). A special relationship exists where the defendant had an obligation to care for the plaintiff's economic well-being or an obligation that implicated the plaintiff's economic expectancies. *Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 205 (D.C. 2017) (quoting *Aguilar*, 98 A.3d at 985).

Here, the parties agree, as they must, that SCG seeks recovery of purely economic losses for its negligence claim. *See* Def.'s Mot., ECF No. 10-1 at 15; Am. Compl., ECF No. 9 ¶ 53. They dispute whether SCG has alleged a special relationship. SSI contends that SCG alleges that "the only relationship whatsoever between the parties is the December 2016 alleged agreement." Def.'s Mot., ECF No. 10-1 at 15 (citing Am. Compl., ECF No. 9 ¶ 51 ("SSI was engaged to furnish and install a fire alarm system for the Project.")). SCG rejects this interpretation of the Amended Complaint, *see* Pl.'s Opp'n, ECF No. 11 at 26-27; explaining that the relationship between contractor and subcontractor is a "paradigm" special relationship because SSI "had an obligation . . . that implicated SCG's economic interests," *id.* at 27 (citing *Whitt*, 157 A.3d at 206). SCG further argues that the parties were in a special relationship because they were in privity of contract. *Id.* at 26 (citing *Aguilar*, 98 A.3d at 985; *Commonwealth Land Title Ins. Co. v. KCI Techs., Inc.*, 922 F.3d 459, 468 (D.C. Cir. 2019)).

The Court concludes that SCG has adequately alleged that the parties were in a special relationship. Admittedly, "there is limited legal authority in the District of Columbia addressing the factual circumstances that may give rise to a 'special relationship.'" *Heidi Aviation, LLC v. Jetcraft Corp.*, 573 F. Supp. 3d 182, 199 (D.D.C. 2021) (reviewing relevant cases). The existing caselaw, however, suggests that a special relationship exists where there is contractual privity or some other close nexus between the parties. *Aguilar*, 98 A.3d at 985 n.3 (citation omitted). Here, SCG has alleged that it was in privity of contract with SSI. Pl.'s Opp'n, ECF No. 11 at 27; Am. Compl., ECF No. 9 ¶ 16. This contract clearly implicated SCG's economic expectancies. *See* Am. Compl., ECF No. 9 ¶¶ 34-41. The Court is persuaded that this is sufficient to plead a special relationship. *Cf., e.g.*, *Vantage Commodities Fin. Servs. I, LLC v. Willis Ltd.*, 531 F. Supp. 3d 153, 177-79 (D.D.C. 2021) (no "special relationship" because "[t]here was no 'contractual privity or its equivalent'" between the parties); *McDowell v. CGI Fed. Inc.*, No. CV 15-1157, 2017 WL 2392423, at *4-5 (D.D.C. June 1, 2017) (plaintiff did not adequately allege a "special relationship" because plaintiff did "not argue that she was in contractual privity, or its equivalent" with defendant).

Because SCG has pleaded a special relationship between the parties, the economic loss doctrine does not apply. The Court

19

therefore **DENIES** SSI's Motion to Dismiss Count II of the Amended Complaint.

### C. Venue is Proper in the District of Columbia

Finally, SSI moves to dismiss this case for improper venue. Def.'s Mot., ECF No. 10-1 at 15-17. For the following reasons, the Court concludes that venue is proper in the District.

Pursuant to 28 U.S.C. § 1391(b), a lawsuit "may be brought in" a judicial district (1) where "any defendant resides, if all defendants are residents of the State in which the district is located"; (2) where "a substantial part of the events or omissions giving rise to the claim occurred"; or (3) if there is no judicial district where the case may be brought as provided by the first two categories, where "any defendant is subject to the court's personal jurisdiction." 28 U.S.C. § 1391(b). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)." *Atl. Marine Constr. Co.*, 571 U.S. at 56.

Here, SCG alleges that venue is proper in this judicial district because (1) "a substantial part of the events or omissions giving rise to the claim occurred" here, Am. Compl., ECF No. 9 ¶ 14 (citing 28 U.S.C. § 1391(b)(2)); and (2) the District is "the exclusive venue for any dispute between the parties" under the Subcontract Agreement, *id.* ¶ 15. SSI argues that, "to the extent that the Court finds that the Project is

somehow exempt from [D.C.] regulations, that finding would remove any substantial nexus between this forum and the Project." Def.'s Mot., ECF No. 10-1 at 17. This argument is unpersuasive. The Project was located in the District. Am. Compl., ECF No. 9 ¶ 16. The construction and contractual activity at issue all occurred in the District. *Id.* ¶¶ 16-42. The Court's conclusion that the District's licensing laws do not apply to SCG's work on the Project does not change the fact that "a substantial part of the events or omissions giving rise to the claim occurred" in the District. 28 U.S.C. § 1391(b)(2). Venue is proper; accordingly, the Court **DENIES** SSI's Motion to Dismiss for improper venue.

## V.    Conclusion

For the foregoing reasons, the Court **DENIES** SSI's Motion to Dismiss. *See* ECF No. 10.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**


Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **March 15, 2023**